1
2
3
4
5
6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

7
8
9

UNITED STATES OF AMERICA,

Plaintiff,

10
11

v.

12
13
14

PETER MAHONEY, PEGGY MAHONEY, LYLE W. CONWAY, MARK VAN'T HUL, and LYLE S. CONWAY,

15

Defendants.

NOS. CR-04-2127-RHW
CR-04-2128-RHW
CR-04-2129-RHW
CR-04-2130-RHW
CR-04-2131-RHW

**ORDER DENYING DEFENDANT PETER MAHONEY'S MOTION TO DISMISS BASED ON TREATY VIOLATIONS; GRANTING DEFENDANTS LYLE W. CONWAY, LYLE S. CONWAY, AND PEGGY MAHONEY'S MOTIONS FOR JOINDER; GRANTING DEFENDANTS PETER AND PEGGY MAHONEY'S AND LYLE W. CONWAY'S MOTIONS TO CONTINUE TRIAL**

16
17
18
19
20
21

    Before the Court are Defendant Peter Mahoney's Motion to Dismiss Based

22

on Treaty Violations (CR-04-2127-RHW, Ct. Rec. 74), Defendant Lyle W.

23

Conway's Motion to Join in Motion of Peter Mahoney to Strike Trial Setting (CR-

24

04-2129-RHW, Ct. Rec. 40), Defendant Peggy Mahoney's Joinder in Defendant

25

Peter Mahoney's Motion to Strike Trial Setting and Continue Trial Date (CR-04-

26

2128-RHW, Ct. Rec. 42), Defendant Lyle S. Conway's Notice of Joinder in

27

Motion of Co-Defendant to Strike Trial Setting (CR-04-2131-RHW, Ct. Rec. 41),

28

**ORDER DENYING DEFENDANT PETER MAHONEY'S MOTION TO DISMISS BASED ON TREATY VIOLATIONS, *INTER ALIA* \* 1**

and Defendant Peter Mahoney's Motion to Strike Trial Setting and Continue Trial Date (CR-04-2127-RHW, Ct. Rec. 87). A motion hearing was held on September 7, 2005, in Spokane, Washington. Mr. Mahoney was present and represented by defense counsel, Mark Vovos. Defendant Peggy Mahoney was also present without counsel. Counsel for Lyle W. Conway, Robert Kovacevich, was present. Assistant United States Attorney Jane Kirk appeared for the Government. For the following reasons, Defendant Peter Mahoney's motion to dismiss is denied; Defendant Peggy Mahoney's motion to join and Defendant Lyle W. Conway's motion to join are granted; and Defendant Peter Mahoney's motion to continue is granted.

## BACKGROUND

A superseding indictment was filed against Defendants on January 12, 2005. The indictment alleges that Defendants were engaged in a conspiracy to traffic in contraband cigarettes between Idaho and Washington, and did traffic in contraband cigarettes between Idaho and Washington, and did aid and abet the same, in violation of the Contraband Cigarette Trafficking Act ("CCTA"), 18 U.S.C. §§ 371, 2342(a) & 2. The indictment also alleges that Defendants engaged in money laundering, conspiracy to commit money laundering, and aided and abetted money laundering, in violation of 18 U.S.C. §§ 1956, 1957 & 2.

## DISCUSSION

### I.     Defendant Peter Mahoney's Motion to Dismiss Based on Treaty Rights

Defendant Peter Mahoney moves the Court to dismiss the indictment because the CCTA violates his treaty rights as a member of the Coeur d'Alene Tribe. Defendant submits that the extensive trading history between the Coeur d'Alene, Puyallup, and other Tribes in tobacco and other goods, as memorialized in historical literature and in the provisions of the Coeur d'Alene Constitution, creates an implied or prescriptive right to travel and trade free of regulation. In the

**ORDER DENYING DEFENDANT PETER MAHONEY'S MOTION TO DISMISS BASED ON TREATY VIOLATIONS, *INTER ALIA* * 2**

alternative, Defendant points to several provisions in unratified treaties of the Coeur d'Alene Tribe as evidence that a treaty right to travel exists. Defendant also argues that the Supreme Court's holding in *Washington v. Confederated Tribes of Colville Indian Reservation*, 447 U.S. 134 (1980), does not abrogate the applicability of the Idaho Supreme Court's reasoning in *Mahoney v. State Tax Commission*, 96 Idaho 59, 534 P.2d 187 (1974). In addition, Defendant asserts that states cannot tax interstate commerce or any commerce between Indian Tribes, citing *Minnesota v. Blasius*, 290 U.S. 1 (1933). The Government argues that the motion is without merit, stating that only a right to travel free from regulation memorialized in a ratified treaty can trump the application of the CCTA to Indians.[1]

## A.    Express Treaty Rights of the Coeur d'Alene Tribe

Defendant argues that he has a right to trade with other Indian Tribes on their reservations, both statutorily and historically. In support he quotes 25 U.S.C. § 4301, which states that "Indian tribes retain the right to enter into contracts and agreements to trade freely. . . ." Defendant also cites historical accounts of trade among Indian Nations describing extensive trail systems connecting the lands of plains Tribes, like the Coeur d'Alene, and coastal Tribes, like the Puyallup. The historical evidence and the right of Indian Tribes to trade freely are undisputed, but it does not follow that Indians or Tribes also have a right to trade freely in illegal goods. *See United States v. Smiskin*, 2005 WL 1288001, at *5 (E.D. Wash. May 31, 2005). The cigarettes at issue in this case are allegedly contraband under Washington State and federal law. *See* RCW 82.24.260; 18 U.S.C. § 2342(a).

---

[1] Defendant's motions are also untimely. All pretrial motions should have been set for hearing on April 18, 2005, pursuant to this Court's December 2, 2004 Order (Ct. Rec. 21). The Court, however, exercises its discretion to deny Defendant's motion on its merits.

**ORDER DENYING DEFENDANT PETER MAHONEY'S MOTION TO DISMISS BASED ON TREATY VIOLATIONS, *INTER ALIA* * 3**

Defendant rests his treaty rights argument on the recent holding in *United States v. Smiskin*, 2005 WL 1288001, in which the government lodged charges similar to those in this case, and the indictment was dismissed based on treaty rights. *Smiskin*, 2005 WL 1288001, at *1, *4. However, the facts in *Smiskin* are distinguishable from those here. The holding in *Smiskin* was based on Article III of the Yakama Treaty of 1855, a clause that had been analyzed in depth by Judge McDonald in *Yakima Indian Nation v. Flores*, 955 F. Supp. 1229 (E.D. Wash. 1997), *aff'd Cree v. Flores*, 157 F.3d 762 (9th Cir. 1998). After an extensive evidentiary hearing involving testimony from several expert witnesses and Tribal members, Judge McDonald used the canons of construction appropriate for Indian treaties to determine the meaning of Article III as the Yakamas would have understood it at the time. The court held that Article III "unambiguously secures to the Yakama Nation and its members the right to travel the public highways without restriction." *Yakima Indian Nation*, 955 F. Supp. at 1260.

In *Smiskin*, Judge Shea used this definitive interpretation of the Yakama Treaty of 1855 to determine the applicability of the CCTA to Yakama Tribal members. 2005 WL 1288001, at *2. The Yakama's right to travel, as articulated in *Yakima Indian Nation* and affirmed in *Cree*, is nonexclusive. Therefore, Tribal members "must still comply with regulations imposed by the state which are designed to preserve and maintain the condition of the roads." *Yakima Indian Nation*, 955 F. Supp. at 1257. According to Judge Shea, the burdens imposed by RCW 82.24.250 are outside these approved areas of regulation and, thus, "abrogate Yakama Tribal members' right to travel under the Treaty." *Smiskin*, 2005 WL 1288001, at *4. "[B]ecause RCW 82.24.250's pre-notification requirement relates to Washington State's effort to collect taxes and not an important travel-related State concern, it is an impermissible impingement upon the Yakamas' right to travel, including the right to transport goods to market as contained in the Yakama

**ORDER DENYING DEFENDANT PETER MAHONEY'S MOTION TO DISMISS BASED ON TREATY VIOLATIONS, *INTER ALIA* * 4**

Treaty of 1855." *Id*.  Because the pre-notification requirements did not apply to defendants, the cigarettes at issue in *Smiskin* were not "contraband" and could not be the basis of a CCTA criminal prosecution.  *Id*.

The holding in *Smiskin* was very fact-dependent, resting exclusively on the extensive research of and testimony related to the Yakama Treaty from *Yakima Indian Nation*.  Here, Defendant Mahoney is a member of the Coeur d'Alene Tribe, and as such cannot assert a Yakima treaty right.  *Yakima Indian Nation*, 955 F. Supp. at 1266 (holding that "[t]he Treaty right to travel, although secured to the Yakama Indian Nation, can be exercised by its individual members, and any Yakama-owned and operated corporation or business, which is tribally licensed" and not members of other Tribes).  Defendant does not have standing to assert any similar rights that may exist under the Puyallup Treaty, either.

The Coeur d'Alene Tribe does not have a ratified treaty with the United States.  Its reservation was established by executive orders in 1887 and 1889, and these were ratified by Congress in 1891.  Act of Mar. 3, 1891, ch. 543, §§ 19, 20, 26 Stat. 1026-32; *see also Idaho v. United States*, 533 U.S. 262, 265-71 (2001) (discussing the establishment of the Coeur d'Alene reservation and the Tribe's history of negotiations with the United States government).  These executive orders contain no reference to a right to travel or even public highways generally.  Defendant points to provisions from the 1858 Peace Treaty and the 1873 Executive Order pertaining to the Coeur d'Alene Tribe.  However, neither of these agreements were ratified by Congress, and, thus, have no legal effect.  *See Fellows v. Blacksmith*, 60 U.S. (19 How.) 366, 372 (1856) (stating that a treaty, "*after executed and ratified* by the proper authorities of the Government, becomes the supreme law of the land") (emphasis added).

Therefore, although traveling for trade and commercial purposes no doubt

**ORDER DENYING DEFENDANT PETER MAHONEY'S MOTION TO DISMISS BASED ON TREATY VIOLATIONS, *INTER ALIA* * 5**

1  was then and remains today vital to members of the Coeur d'Alene Tribe,[2] there is

2  no ratified treaty provision similar to that discussed in *Yakima Indian Nation* that

3  grants Tribal members the right to travel without restrictions.  The CCTA is a law

4  of general applicability "presumed to apply with equal force to Indians."  *United*

5  *States v. Baker*, 63 F.3d 1478, 1484 (9th Cir. 1995).  Admittedly, it cannot apply to

6  Defendant if its application would abrogate rights guaranteed to him by treaty.

7  *Smiskin*, 2005 WL 1288001, at *2.  However, Defendant has no express treaty

8  right to travel.

9       **B.    Implied Treaty Rights of the Coeur d'Alene Tribe**

10      In the alternative, Defendant argues that the Court should recognize an

11  implied or prescriptive right to travel.  Defendant bases this argument on dicta

12  from *Smiskin*:

13       Yakama Tribal members, prior to the Treaty of 1855, did not need to notify
         anyone including the United States or Washington Territorial authorities
14       prior to transporting goods to market and the Treaty did not change that.  To
         find otherwise, the Court would have to conclude that the Yakama Tribe
15       understood the Treaty to give government authorities the right to require
         them to report any good, including traditional trade items such as salmon or
16       berries, prior to transporting them to other tribes or newly emerging markets.
         On the contrary, the Treaty's language and its history support conclusions
17       that Yakama Tribal members would be allowed to use public highways to
         transport goods to market with as much freedom as they had prior to the
18       treaty. . . .

19  2005 WL 1288001, at *3.  Defendant asserts that the Coeur d'Alene Tribe also

20  exercised the right to travel without restrictions historically, and that this right was

21  not abrogated when the executive orders of 1887 and 1889 were ratified, even

22  though they did not mention public highways or the right to travel.

23      The Supreme Court has made clear that treaties with Indian Tribes are to be

24  _____

25      [2]  "Coeur d'Alene" translates to "heart of the awl."  This referred to "the

26  sharpness of the trading skills exhibited by tribal members in their dealings with

27  visitors."  Coeur d'Alene Tribe, *'etsmlk'wnk'u'lmn: Overview*, at

28  http://www.cdatribe-nsn.gov/overview.html (last updated Sept. 12, 2005).

**ORDER DENYING DEFENDANT PETER MAHONEY'S MOTION TO**
**DISMISS BASED ON TREATY VIOLATIONS, *INTER ALIA* * 6**

construed generously.  *E.g.*, *Choctaw Nation v. United States*, 318 U.S. 423, 432 (1943) (stating that treaties and agreements with Indians "are to be construed, so far as possible, in the sense in which the Indians understood them, and 'in a spirit which generously recognizes the full obligation of this nation to protect the interests of a dependent people'"); *Washington v. Fishing Vessel Ass'n*, 443 U.S. 658, 675-76 (1979) (explaining that, because of the United States government's superior bargaining power, a treaty between it and Indian Tribes must be construed "not according to the technical meaning of its words to learned lawyers, but in the sense in which they would naturally be understood by the Indians"); *see also Felix S. Cohen's Handbook of Federal Indian Law* 221-222 (Strickland *et al.* eds.) (2d ed. 1982).  The Court has also recognized implied rights, such as reserved water rights, *Winters v. United States*, 207 U.S. 564, 576-77 (1908) (water rights implied because necessary for the purpose of the reservation, which was to help the Indians "become a pastoral and civilized people" through agriculture), and the right to hunt and fish, *Menominee Tribe v. United States*, 391 U.S. 404, 405-06 (1968) (rights implied from treaty language describing title to the reservation as "held as Indian lands are held").  However, these rights were implied through necessity: They were rights necessary to the intended use of reservation lands and to the continuing existence and well-being of the Tribes involved, and they were implied from language in ratified treaties and agreements.  No such necessity exists here, nor does any treaty language that would support such an implication.

Defendant asks the Court to go too far by demanding recognition of an implied right based solely on historical practice and not connected in any way to rights enumerated in the executive orders establishing the Coeur d'Alene Reservation.  Defendant's argument, if accepted, would eliminate the need to construe treaties, for any and all rights exercised by Tribes before treaty negotiation and the encroachment of European and American settlers on Indian

**ORDER DENYING DEFENDANT PETER MAHONEY'S MOTION TO DISMISS BASED ON TREATY VIOLATIONS, *INTER ALIA* * 7**

1   land would necessarily continue.  This analysis would make the existence of a

2   treaty irrelevant.  However, the canons of construction and implied rights

3   recognized by the judiciary must have as their basis a treaty or agreement that,

4   through ratification, has become "the supreme law of the land."  *Worcester v.*

5   *Georgia*, 31 U.S. (6 Pet.) 515, 559 (1832).  There is no such basis here.

6          The requirement of treaty language for rights such as that asserted by

7   Defendant is supported in *United States v. Farris*, a case cited by Defendant.  In

8   *Farris*, the Ninth Circuit recognized three exceptions to the rule that a statute of

9   general applicability, like the CCTA, applies with equal force to Indians.  624 F.2d

10  890, 893-94 (1980).  First, Indian Tribes have "exclusive jurisdiction over essential

11  matters of reservation government" unless specifically limited by Congress.  *Id*. at

12  893.  Second, there is a presumption "that Congress does not intend to abrogate

13  rights guaranteed by Indian treaties when it passes general laws, unless it makes

14  specific reference to Indians."  *Id*.  Third, Indians may "prove by legislative history

15  or some other means that Congress intended [the law] not to apply to Indians. . . ."

16  *Id*. at 893-94.  Defendant argues that the CCTA interferes with his treaty rights, so

17  he is covered by the second exception.  However, the Ninth Circuit limited this

18  exception to "subjects specifically covered in treaties."  *Id*. at 893.  The Ninth

19  Circuit reasoned that "[a] different norm would only necessitate a huge quantity of

20  statutory boilerplate."  *Id*.  In other words, a right established by implication would

21  not exempt Indians from federal laws of general applicability like the CCTA.  The

22  Coeur d'Alene Tribe does not have an express treaty right to travel without

23  restrictions, so the CCTA applies to Defendant.

24          **C.    *Colville*'s Applicability to *Mahoney***

25          Defendant also argues the holding from his family's case before the Idaho

26  Supreme Court should control.  The Idaho Supreme Court held that the Idaho State

27  Tax Commission could not tax the on-reservation sale of cigarettes by an Indian

28

**ORDER DENYING DEFENDANT PETER MAHONEY'S MOTION TO
DISMISS BASED ON TREATY VIOLATIONS, *INTER ALIA* * 8**

seller, whether to Indians or non-Indians. *Mahoney v. Idaho*, 96 Idaho 59, 67, 524 P.2d 187, 195 (1974). Six years later, the United States Supreme Court upheld the right of a state to impose and enforce a tax on cigarettes sold by Indians to nontribal members, and to require tribal smokeshops to affix tax stamps to individual packages of cigarettes. *Washington v. Confederated Tribes of the Colville Indian Res.*, 447 U.S. 134, 159-60 (1980). Defendant asserts that the dicta in *Mahoney* referring to the contiguous boundary between Washington and the Coeur d'Alene Reservation is meaningful here. *Mahoney*, 96 Idaho at 63, 524 P.2d at 191. This Court recognizes that a contiguous boundary between Washington and the Coeur d'Alene Reservation exists; however, the Court fails to see its significance to this case. *Colville* abrogated the pertinent holding in *Mahoney* regarding a state's ability to tax cigarette sales to non-members of a Tribe, so Defendant's reliance on the earlier case is unfounded.

### D.  States' Ability to Tax Interstate Commerce

Lastly, Defendant Mahoney argues that it is "elementary hornbook law" that states cannot tax interstate commerce. Defendant relies on *Mahoney* and *Blasius* for this assertion. However, closer reading of those cases reveals that states may not tax "property *in transit* in interstate commerce." *Mahoney*, 96 Idaho at 63, 524 P.2d at 191 (citing *Blasius*, 290 U.S. at 9) (emphasis added). Here, the cigarettes at issue reached their point of sale in Washington, and those cigarettes were not being sold solely to tribal members. Therefore, considering the holding in *Colville* allowing state taxation of cigarette sales to non-members, the State had the right to enforce the provisions of RCW 82.24.250 on the cigarettes at issue here.

## II.  Defendant Peter Mahoney's Motion to Continue

Before the Court are Defendant Peter Mahoney's Motion to Strike Trial Setting and Continue Trial Date from September 26, 2005 (CR-04-2127-RHW, Ct. Rec. 87), Defendant Peggy Mahoney's Joinder of Motion to Strike Trial Setting

**ORDER DENYING DEFENDANT PETER MAHONEY'S MOTION TO DISMISS BASED ON TREATY VIOLATIONS, *INTER ALIA* \* 9**

and Continue Trial Date from September 26, 2005 (CR-04-2128-RHW, Ct. Rec. 42), Defendant Lyle W. Conway's Motion to Join in Motion of Peter Mahoney to Strike Trial Setting (CR-04-2129-RHW, Ct. Rec. 40), and Defendant Lyle S. Conway's Notice of Joinder in Motion of Co-Defendant to Strike Trial Setting (CR-04-2131-RHW, Ct. Rec. 41).  Defendant Mark Van't Hul has not joined in the motion.  The Government did not object to a continuance.

In his motion, Defendant Mahoney requests an extension of time to allow counsel to review approximately 150 boxes of invoices, cash register tapes, financial records, checks, bank statements, and other items taken from Defendant's business, storage warehouse, and home.  The materials are in Yakima and Seattle in the custody of the Bureau of Alcohol, Tobacco, and Firearms.  To allow additional time for investigation and preparation for trial and in the interest of justice, the Court finds a continuance is justified.

Accordingly, **IT IS HEREBY ORDERED:**

1.      Defendant Lyle W. Conway's Motion to Join in Motion of Peter Mahoney to Strike Trial Setting (CR-04-2129-RHW, Ct. Rec. 40), Defendant Peggy Mahoney's Joinder in Defendant Peter Mahoney's Motion to Strike Trial Setting and Continue Trial Date (CR-04-2128-RHW, Ct. Rec. 42), Defendant Lyle S. Conway's Notice of Joinder in Motion of Co-Defendant to Strike Trial Setting (CR-04-2131-RHW, Ct. Rec. 41), and Defendant Peter Mahoney's Motion to Strike Trial Setting and Continue Trial Date (CR-04-2127-RHW, Ct. Rec. 87) are **GRANTED**.

2.      The current trial date of **September 26, 2005** is **stricken**.  Trial is **reset** for **May 30, 2006**, in **Spokane, Washington**, at **9:00 a.m**.  Counsel shall appear in chambers at 8:30 a.m.  Defendant Mark Van't Hul, who was not present at the hearing on September 7, 2005, may file an objection to the new trial date within 10 days of entry of this order.

**ORDER DENYING DEFENDANT PETER MAHONEY'S MOTION TO DISMISS BASED ON TREATY VIOLATIONS, *INTER ALIA* * 10**

3.     Should any party want to schedule another pre-trial conference, it shall contact the Court by April 3, 2006.  The District Court Executive is directed to set a **case management deadline** on April 3, 2006.

4.     Pursuant to 18 U.S.C. § 3161(h)(8)(B)(ii), the time between **September 26, 2005**, until **May 30, 2006**, is **DECLARED  EXCLUDABLE** for purposes of computing time under the Speedy Trial Act.  The Court finds that the above cases are complex, and the ends of justice served by such a continuance outweigh the interests of the public and Defendants in a speedy trial.

5.     **Defendant Peter Mahoney** (CR-04-2127-RHW), **Defendant Peggy Mahoney** (CR-04-2128-RHW), **Defendant Lyle W. Conway** (CR-04-2129-RHW), **Defendant Mark Van't Hul** (CR-04-2130-RHW), and **Defendant Lyle S. Conway** (CR-04-2131-RHW) shall file a waiver of their speedy trial rights within **two weeks** of the date of this order.

6.     Defendant Peter Mahoney's Motion to Dismiss Based on Treaty Rights (CR-04-2127-RHW, Ct. Rec. 74) is **DENIED**.

7.     The Government's Motion to Extend Time to Respond to Pretrial Motions (CR-04-2128-RHW, Ct. Rec. 32; CR-04-2131-RHW, Ct. Rec. 28) is **DENIED** as moot.

8.     Defendant Peter Mahoney's Motion for Leave to File Excess Pages (CR-04-2127-RHW, Ct. Rec. 65) is **DENIED** as moot.

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this order and to provide copies to counsel.

**DATED** the 16th day of September, 2005.


s/ ROBERT H. WHALEY
Chief United States District Judge

Q:\CRIMINAL\2004\Mahoney\mahoney.treaty.continue.ord.wpd

**ORDER DENYING DEFENDANT PETER MAHONEY'S MOTION TO DISMISS BASED ON TREATY VIOLATIONS, *INTER ALIA* * 11**